**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 20-20057-CV-WILLIAMS**

MARIA DIAZ, Individually and As
Personal Representatives of the Estate of
VITA GIAMBANCO, deceased,

      Plaintiff,

vs.

SOCIETE AIR FRANCE COMPANY and
MIAMI-DADE COUNTY,

      Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendant Société Air France Company's ("Air France") Motion to Dismiss (the "Motion").[1] (DE 44.) Plaintiff filed a response in opposition to the Motion. (DE 49.) Defendant Air France filed a reply. (DE 50.) For the reasons set forth below, the Motion is GRANTED IN PART.

## I.    BACKGROUND

On September 6, 2019, Mrs. Vita Giambanco ("Giambanco") and her family boarded a plane to travel from Miami, Florida to Barcelona, Spain. Before Giambanco was to reach Barcelona, she had a connection in Paris, France. While at the Miami International Airport, an agent advised Giambanco to check her walker, which she

---

[1] Plaintiff filed a Second Amended Complaint since the filing of the Motion. In the Second Amended Complaint (DE 55), Plaintiff substituted Miami-Dade County for the Miami-Dade Aviation Department. The Parties and the Court agreed that Defendant Air France would not need to file a duplicative motion to dismiss given that the arguments applied equally to the Amended Complaint and the Second Amended Complaint. (DE 54.)

routinely used to assist her. Plaintiff advised the agent that Giambanco would need a wheelchair throughout her travels.

Upon landing in Paris at Charles de Gaulle Airport, Giambanco awaited a wheelchair to transport her through customs and security to her connecting flight. Defendant Air France's agents and/or employees then escorted Giambanco to a waiting room where she was told a wheelchair would be provided. After waiting approximately forty minutes for a wheelchair to arrive, agents and/or employees informed Giambanco that there was not enough space in the transport van and that she would have to walk for thirty minutes with her belongings to the departure gate.

Unfortunately, upon arrival at the departure gate for her flight to Barcelona, Giambanco was "perspiring profusely, dizzy, and nauseous." (DE 55 ¶ 33.) After boarding the flight, her condition further deteriorated. She began to vomit and passed out thirty minutes into the flight. Her husband alerted Defendant Air France's employees of the medical emergency and requested an ambulance to meet the flight upon arrival. Upon arrival in Barcelona, Giambanco became unresponsive. She and her family waited to disembark until the ambulance arrived. Although she was transported to a hospital, she remained comatose for four days. Life support was terminated on September 10, 2019, after it was determined that she lacked brain function.

Plaintiff asserts a claim for damages against Air France under the Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada, on May 28, 1999 ("Montreal Convention"). Plaintiff also asserts a claim for negligence against Miami-Dade County (the "County").

Defendant Air France moves to dismiss the case on the grounds of *forum non conveniens*, failure to state a claim, and failure to name Aéroports de Paris as an indispensable party. Because the Court finds that the Motion should be granted on *forum non conveniens* grounds, the Court declines to address the remaining arguments.[2]

## II.    LEGAL STANDARD

"In reviewing a motion to dismiss for *forum non conveniens*, we accept as true the factual allegations in the complaint to the extent they are uncontroverted by affidavits or other evidence." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020). "The doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009) (italicization added). A defendant who seeks to obtain dismissal on the ground of *forum non conveniens* must show "(i) that an adequate alternative forum is available, (ii) that relevant public and private interests weigh in favor of dismissal, and (iii) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Id.* (quoting *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356–57 (11th Cir. 2008)).

> Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment. Relevant public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally.

---

[2] In assessing Defendant's arguments regarding *forum non conveniens*, the Court considers some of Defendant's indispensable party arguments, but only to the extent that they are relevant to this analysis.

*Newvac*, 584 F.3d at 1056.

In considering these factors, the plaintiff's choice of forum is "entitled to deference, and there is a presumption in favor of" that choice. *Wilson v. Island Seas Invs. Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009). "[The] presumption is not dispositive, and a defendant can always marshal positive evidence to overcome it." *Otto Candies*, 963 F.3d at 1346 (citation omitted). Accordingly, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.23 (1981).

## III.   DISCUSSION

### A.   **Forum Non Conveniens**

#### i.   Adequate Alternative Forum

"The first factor involves two inquiries: whether the alternative forum is adequate and available." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quotation omitted). The alternative forum is considered "adequate" if there is an available and satisfactory remedy, as opposed to something that amounts to "no remedy at all." *Id.* at 1330–31; *see also Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (quoting *Piper Aircraft*, 454 U.S. at 254) ("The Supreme Court noted that a remedy is inadequate when it amounts to 'no remedy at all.'"). "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Id.* (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)).

Here, Defendant Air France is a French public limited company headquartered at 45 Rule de Paris, 93290, Tremblay en France, France. So there is no impediment to French courts exercising jurisdiction over Air France. But to resolve any potential issue, Air France has agreed to waive any statute of limitations defense, accept service of process, and submit to the jurisdiction of the French courts in the event of a dismissal on *forum non conveniens* grounds. "Ordinarily, [the adequate alternative forum] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft,* 454 U.S. at 255 n.22 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–507 (1947)); *see also In re W. Caribbean Airways*, No. 06-22748-CIV, 2012 WL 1884684, at *7 (S.D. Fla. May 16, 2012) (Ungaro, J.), *aff'd sub nom. Galbert v. W. Caribbean Airways*, 715 F.3d 1290 (11th Cir. 2013) (quoting *Leon,* 251 f.3d at 1311) (noting that the Eleventh Circuit provides that the "available" requirement is satisfied if the moving party shows that it is amenable to process in that forum.). As in *West Caribbean Airways* and *Leon*, the movant at bar has waived jurisdictional and statute of limitations objections, making France an available forum for redress.

Plaintiff asserts that despite Defendant's stipulations, which support a finding of availability, a 2011 decision of the French Supreme Court—the Cour de Cassation—renders France "unavailable." *See W. Caribbean Airways*, 2012 WL 1884684, at *5 (detailing the history of the French decision, which resulted from an earlier *forum non conveniens* dismissal in the case). But like the plaintiffs in *West Caribbean Airways*, Plaintiff here is "eliding" the distinction between her willingness to avail herself of an alternative forum and its actual availability. *Id.* at *8 (citing *Morales v. Ford Motor Co.,* 313 F. Supp. 2d 672, 676 (S.D. Tex. 2004)).

In *West Caribbean Airways*, the plaintiffs brought an action under the Montreal Convention in the Southern District of Florida based on an airplane crash that occurred in Venezuela. 2012 WL 1884684. Judge Ungaro dismissed the case on *forum non conveniens* grounds, finding that the intended destination of the flight—Martinique—was the most appropriate forum, and that Martinique was one of the permissible fora under the Montreal Convention. Following dismissal in this Court, the plaintiffs filed a case in Martinique, but, rather than asserting their claims on the merits, they sought a declaration that the Martinique court would not hear the case. But the Martinique court and the appellate court both determined that they had jurisdiction under the Montreal Convention. Finally, the plaintiffs sought review by the Cour de Cassation in Paris, maintaining their position that the French courts should decline jurisdiction. The Cour de Cassation agreed with the plaintiffs that jurisdiction under the Montreal Convention could only be determined by the plaintiffs' choice.

Returning to the Southern District of Florida, the plaintiffs asked Judge Ungaro to vacate the dismissal on these novel grounds. The Court denied the motion, disagreeing with the notion that "a plaintiff's unilateral choice of forum strips all other Convention fora of jurisdiction." *Id.* at *9 ("while the Court de Cassation found that Plaintiffs' preference to litigate in America deprived the *otherwise competent* Martinique Court of jurisdiction, by its interpretation of the Convention, Martinique can assert jurisdiction over this litigation *if and when Plaintiffs agree to it*." (Emphases added)). The Court noted that "hundreds of claimants had already taken advantage of . . . settling or having their claims adjudicated by the Martinique Court." *Id.* at *5.

6

Having reviewed the history of that case and the Cour de Cassation's opinion, the Court agrees with the rationale in *West Caribbean Airways* and finds Plaintiff's arguments here inapposite. As discussed in *West Caribbean Airways*, a party's intransigence does not alter a *forum non conveniens* jurisdictional analysis.[3] As to the first factor, France has been and remains an adequate and available forum to hear Plaintiff's damages claims if Plaintiff chooses to pursue them in France upon dismissal by this Court. *See Eldeeb as Tr. for Eldeeb v. Delta Air Lines, Inc.*, No. CV 18-1128 (DSD/TNL), 2018 WL 6435739, at *3 (D. Minn. Dec. 7, 2018) (finding—in a strikingly similar case—that the Cour de Cassation's opinion "did not appear to foreclose French jurisdiction in any and all Montreal Convention cases initially filed in another appropriate fora [sic].").[4] Consequently, the

---

[3] From the outset of the *West Caribbean Airways* case, the plaintiffs alleged that the French courts did not have jurisdiction over their case. Because the plaintiffs maintained that they were "forced" to bring their action to the French courts, the French supreme court ruled that its courts would not reach the merits.

[4] A consideration underlying the French decision was whether the Montreal Convention permitted the courts of its signatories to apply the doctrine of *forum non conveniens* in cases brought pursuant to the Convention. One scholar in the field of international aviation law analyzed the *West Caribbean Airways* opinion, the Cour de Cassation opinion, and related cases in great depth. In considering the legislative history of the Montreal Convention and comparing it to that of the Warsaw Convention, the author noted:

> When we consider what understanding the drafters would have had of the substantive right granted to plaintiffs to choose their forum under Articles 33(1) and 33(2) of [Montreal Convention of 1999 ("MC99")], then an inescapable conclusion imposes itself. Not only was the exercise of the doctrine of [*forum non conveniens* ("FNC")] not inconsistent with that right, it was plainly and openly contemplated by the drafters. This is the key distinction between MC99 and the Warsaw Convention. With MC99, FNC was clearly within the contemplation of the drafters; therefore, the substantive right granted to the plaintiff under Article 33 was not regarded as absolute in the sense that it would have been by the drafters of the Warsaw Convention. Whatever the precise balance struck between competing interests, it was one struck on the shared understanding of the drafters that FNC may be applied. . . . When it comes to the decision reached by the Cour de Cassation, its failure to consider Article 33(1) in its context, specifically Article 33(4), is reason enough to discount it. Furthermore, it would beggar belief if the Cour de Cassation could maintain its position in the light of full consideration of the drafting history. The Cour de Cassation is, as a matter of law, wrong.

David Cluxton, *The West Caribbean Conundrum: The United States Versus France on the Availability of Forum Non Conveniens Under the Montreal Convention of 1999*, 85 J. Air L. & Com. 3, 101–02 (2020) https://scholar.smu.edu/jalc/vol85/iss1/2.

Court will turn to the additional factors set forth by the Eleventh Circuit in *Newvac*, 584 F.3d at 1056.

        ii.   <u>Public and Private Factors</u>

Next, the Court must consider whether "the public and private factors weigh in favor of dismissal." *Leon*, 251 F.3d at 1311. In assessing these factors, the Court must weigh the "relative" advantages and disadvantages of each respective forum. *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509).

The Court "begins with the reasonable assumption that '[w]hen the plaintiff has chosen the home forum . . . this choice is convenient.'" *Otto Candies*, 963 F.3d at 1340 (quoting *Piper Aircraft*, 454 U.S. at 255–56). For the Court to deny a plaintiff its chosen domestic forum, a defendant must offer "positive evidence of unusually extreme circumstances" and thoroughly convince the Court that "material injustice is manifest." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (citation omitted) (quoting *Burt v. Isthmus Dev. Co.,* 218 F.2d 353, 357 (5th Cir.1955)). The Supreme Court has identified the following private factors that courts should consider when ruling on a motion to dismiss for *forum non conveniens*:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 508) (quotation omitted).

Given that Plaintiff chose her home forum, the Court begins by affording Plaintiff a strong presumption in her favor. But even with this presumption, the private and public factors overwhelmingly favor dismissal. The Parties conducted *forum non conveniens*

discovery to aid the Court in assessing these factors.[5] As to the first factor, advances in electronic discovery have made certain types of documentary evidence reasonably available from anywhere in the world. The difficulty attendant as to use of these documents is that they would need to be translated to English. While this is not an ideal situation for either Party, it is feasible and does not present an insurmountable obstacle.

Another source-of-proof question in this case involves witnesses. In this regard, the first and second private factors weigh in favor of dismissal. Plaintiff alleges that Giambanco arrived at Charles de Gaulle Airport in France, where she awaited wheelchair assistance. Agents and employees stationed and working in France escorted her to the waiting room. Agents and employees stationed and working in France told her that there was no room in the van. Agents and employees stationed and working in France directed her to walk to her connecting gate. Giambanco became unwell on the way to the gate at Charles de Gaulle and "increasingly ill" once she boarded the flight to Barcelona. (DE 43 ¶ 33.) Indeed, the crux of Plaintiff's allegations is that "[t]he excessive strain Mrs. Giambanco was forced to experience while attempting to board the connecting flight to Barcelona resulted in her death." (DE 43 ¶ 41.)

Nothing in Plaintiff's Amended Complaint suggests that Giambanco was feeling ill when she arrived in France. Indeed, as alleged, she became unwell after being denied a wheelchair in France at Charles de Gaulle Airport and compelled to walk unassisted for a long distance. She then received medical treatment upon her arrival in Barcelona. Aside from her husband and daughter, all of the witnesses that would have personal knowledge

---

[5] It should be noted that in *Otto Candies*, the defendant opposed the plaintiffs' request for limited discovery related to the public and private factors. The district court denied the plaintiffs' motion on the basis that the requests were overbroad and that plaintiffs had not shown good cause, so no jurisdictional discovery was conducted. *Otto Candies*, 963 F.3d at 1338.

of the events at Charles de Gaulle Airport, her medical condition before and after boarding, and her treatment at the hospital in Barcelona are in Europe. Plaintiff does not address these issues in response to the Motion and also fails to address whether all of these integral witnesses would be within the Court's reach.

The balancing of these factors by the Court in *Piper Aircraft* is persuasive. There, while the records related to the design and testing of the airplane were located in the United States, "the District Court did not act unreasonably in concluding that fewer evidentiary problems would be posed if the trial were held in Scotland." 454 U.S. at 257–58. "Th[e] case arose from a plane crash in Scotland. The plane was subject to Scottish air traffic control and operated through a Scottish air taxi service, and the pilot and passengers were all Scottish subjects and residents." *Otto Candies*, 963 F.3d at 1346 (citing *Piper Aircraft*, 454 U.S. at 238–39). The movant had asserted, and the district court agreed, that many crucial categories of witnesses were beyond the reach of compulsory process, and there were issues regarding the ability to implead potential third-party defendants. Each of those factors is present in this case.

Moreover, as with the crucial French witnesses, the Court may consider its ability to reach potentially crucial third-party defendants. In *Piper Aircraft*, the Supreme Court observed that:

> The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland. Joinder of the pilot's estate, Air Navigation, and McDonald is crucial to the presentation of petitioners' defense. If Piper and Hartzell can show that the accident was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, they will be relieved of all liability.

454 U.S. at 259. Defendant Air France argues that continued litigation in Florida would unfairly deprive it of evidence crucial to its defense and its ability to join critical parties to

the action. It asserts that Aéroport de Paris ("ADP") is the airport authority that is responsible for transporting passengers with reduced mobility pursuant to a European Union ("EU") regulation and submitted an affidavit of a French law professor explaining the regulation.

In Article 7, Right to assistance at airports, the regulation states:

1.   When a disabled person or person with reduced mobility arrives at an airport for travel by air, *the managing body of the airport shall be responsible* for ensuring the *provision of the assistance specified in Annex I* in such a way that the person is able to take the flight for which he or she holds a reservation, provided that the notification of the person's particular needs for such assistance has been made to the air carrier or its agent or the tour operator concerned at least 48 hours before the published time of departure of the flight.

Commission Regulation 1107/2006 of July 5, 2006, Concerning the Rights of Disabled Persons and Persons with Reduced Mobility when Travelling by Air, 2006 O.J. (L 204) 1.[6] (emphases added). Annex I states, in relevant part:

**Assistance under the responsibility of the managing bodies of airports**

Assistance and arrangements necessary to enable disabled persons and persons with reduced mobility to:

– proceed from the check-in counter to the aircraft, with completion of emigration, customs and security procedures,
– board the aircraft, with the provision of lifts, wheelchairs or other assistance needed, as appropriate,
– proceed from the aircraft door to their seats, . . .
– disembark from the aircraft, with the provision of lifts, wheelchairs or other assistance needed, as appropriate,
– proceed from the aircraft to the baggage hall and retrieve baggage, with completion of immigration and customs procedures,
– proceed from the baggage hall to a designated point,
– *reach connecting flights when in transit, with assistance on the air and land sides and within and between terminals as needed*.

---

[6] Available at: https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=celex:32006R1107.

*Id.* (second emphasis added). In light of this regulation, Defendant Air France will be significantly hindered in its ability to defend against Plaintiff's claims—which fall squarely within the regulation's parameters—if the managing body of Charles de Gaulle Airport (ADP) is not joined in this lawsuit. Even if the Court could exercise personal jurisdiction over that party (which the Court doubts), joinder would resolve one issue while compounding others previously discussed: additional witnesses (from ADP) who are likely outside of the Court's reach, and the additional documents and communications that would require translation into English.

Contrary to Plaintiff's assertion, this case is unlike *Otto Candies*, 963 F.3d 1331, where much of the Eleventh Circuit's discussion of the private factors turned on whether the defendant satisfied its burden to set forth positive evidence of private inconvenience in a complex commercial dispute.[7] This case involves allegations of negligence and wrongful death for actions that occurred in France and Spain.[8] Defendant has produced documents and communications relevant to the dispute, including the communications between Defendant and the managing authority of Charles de Gaulle Airport regarding Giambanco's request for a wheelchair. Defendant has confirmed that all the crewmembers assigned to both portions of decedent's flight were French citizens. (DE 44-1 at 3.) Furthermore, in Defendant Air France's interrogatory responses, Defendant

---

[7] And, as the Court in *Otto Candies* acknowledged in distinguishing its decision from another matter sounding in tort, *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785 (5th Cir. 2007), "the operative fact was not that the plaintiff did business with a foreign entity, but that it sued for an 'injury occurring in a foreign country' and that the 'alleged torts all occurred in Mexico.'" 963 F.3d at 1341 (quoting 508 F.3d at 795, 802). "This is an important distinction, and one that appears in other international commerce cases." *Id.*

[8] The Court acknowledges that Plaintiff alleges that the decedent checked her walker in Miami, but nothing in Plaintiff's allegations supports an inference that the decedent was ill when she departed Miami or arrived in France because of checking her walker. The allegations are that she became ill after walking a long distance in Charles de Gaulle Airport without wheelchair assistance from Defendant.

affirmatively stated that it had no contractual or non-contractual arrangements and/or agreements with ADP or its subcontractors. (DE 44-1 at 11–12.) Finally, Defendant has identified a French company that ADP contracts with to provide wheelchair services in Charles de Gaulle Airport: Passerelle CDG, located at 10 rue de Rome 93290 Tremblay-en France, France. (*Id.*) Consequently, Defendant has satisfied its burden to set forth positive evidence of private inconvenience in this type of litigation.

Taken together, these factors constitute unusually extreme circumstances that warrant dismissal on *forum non conveniens* grounds—categories of crucial French witnesses that fall outside of the Court's control; EU regulations that undercut Plaintiff's claims against Defendant Air France; and two additional French entities that are likely responsible, in whole or in part for damages. *See Otto Candies*, 963 F.3d at 1347 (noting that the affidavits in *Piper Aircraft*, 454 U.S. at 259 & n.27, identified categories of witnesses as opposed to witnesses by name). The only positive "evidence" that Plaintiff attempts to rebut is the applicability of the French legal decision, which the Court has addressed. Accordingly, the private factors favor dismissal.

The public factors for the Court to consider "include a sovereign's interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *Otto Candies*, 963 F.3d at 1338. "[T]he public interest factors point towards dismissal where the court would be required to untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft*, 454 U.S. at 252 (quotation omitted). These factors also favor dismissal. As to the first and the last factors, the EU has specifically chosen to place responsibility for transporting disabled passengers through terminals on airport authorities. The applicable regulation states that:

> (5) Assistance given at airports situated in the territory of a Member State to which the Treaty applies should, among other things, enable disabled persons and persons with reduced mobility to proceed from a designated point of arrival at an airport to an aircraft and from the aircraft to a designated point of departure from the airport, including embarking and disembarking. . . .
>
> (6) To achieve these aims, ***ensuring high quality assistance at airports should be the responsibility of a central body. As managing bodies of airports play a central role in providing services throughout their airports, they should be given this overall responsibility***.

Commission Regulation 1107/2006 of July 5, 2006, Concerning the Rights of Disabled Persons and Persons with Reduced Mobility when Travelling by Air, 2006 O.J. (L 204) 1 (emphasis added). Here, Plaintiff asks this Court to require Defendant to defend itself in the United States for its activity in France, activity that the EU has specifically chosen to regulate in a certain way that likely absolves Defendant of liability. Given that tens of thousands of passengers travel through European airports using hundreds of different airlines, the EU has determined that airport authorities—as opposed to the airlines—are better suited to provide these services given the "central role" they play. On the other hand in this matter, the sovereign interests of the United States are not as strong as "when its citizens are allegedly victims and the injury occurs on home soil" or where law enforcement is investigating the matter or issue. *See Otto Candies*, 963 F.3d at 1352 (quoting *SME Racks*, 382 F.3d at 1104). Indeed, Giambanco became ill abroad due to actions (or inactions) taken abroad, was treated abroad, and, tragically, passed away abroad. *E.g.*, *Eldeeb*, 2018 WL 6435739, at *3 (finding "all of the material facts occurred in France and the responsible entities are based in France. As a result, the court concludes that the relevant factors weigh strongly in favor of dismissal on the basis of forum non conveniens.").

14

Finally, as to the administrative burdens posed by maintaining this action in this Court, Plaintiff asserts that "[i]n general, in 2017, the average time to receive a court decision in France was 7 months in the District Court (today referred to as the Judicial Tribunal), and 13 months in the Court of Appeal." (DE 49-2 at 15.) Due to the effect of the pandemic on the Court's schedule and the press of trials and other matters, it has taken nearly ten months for the Court to resolve this motion. *See Otto Candies*, 963 F.3d at 1351 (noting "[t]he district court did not cite, for example, any administrative difficulties or docket congestion in the Southern District that warranted a forum non conveniens dismissal.").[9] Certainly, the foreign domicile of Defendant Air France, the potential third parties, the evidence, the numbers of French and foreign witnesses, and the conflict-of-laws issues will further add to the administrative burden and delay adjudication. Thus, compared to the timeframes cited by Plaintiff for the French courts, Plaintiff may experience a more expeditious adjudication of her claims and appeal (if necessary) in France. Accordingly, the public factors favor dismissal.

    iii.   <u>Viability of Suit</u>

Finally, the Court must assess whether Plaintiff can reinstate her suit in the alternative forum without undue inconvenience or prejudice. *Tazoe*, 631 F.3d at 1335. In *Tazoe*, the defendants stipulated that they would consent to service, toll any statute of limitations, and make relevant witnesses and documents within their control available in the event the suit was reinstated in the alternative forum after dismissal. *Id.* Defendant Air France has similarly agreed to "stipulate to waive any statute of limitation defense, as well

---

[9] Furthermore, although Plaintiff cites "13 months in the Court of Appeal" of France as a reason to maintain this action here, the appellate cases here relied on by Plaintiff are not adjudicated at a significantly faster pace than those in France. *See, e.g.*, *Otto Candies, LLC v. Citigroup, Inc.*, Case No. 18-12663 (11th Cir. 2020) (pending on appeal for more than two years).

as accept service of process, and submit to the jurisdiction of the French courts in the event of a dismissal on forum non conveniens grounds." (DE 44-1 at 4.)

In the time that this case has been pending, the Parties did engage in limited discovery but did not set any discovery disputes for a hearing as is required for disputes by Chief Magistrate Judge Edwin Torres' standing discovery order.[10] Nothing on this record indicates that Defendant Air France has not cooperated with the discovery required by this Court and the Federal Rules or would not cooperate with any additional discovery required by the French courts. Accordingly, the Court sees no impediment to Plaintiff reinstating this suit in France.

The Court also notes that certain courts have included a "return jurisdiction" clause in *forum non conveniens* dismissals. The Eleventh Circuit in *Otto Candies* noted "that [while] a return jurisdiction clause is permissible, we still foresee possible practical difficulties." *Otto Candies*, 963 F.3d at 1353. One such concern was that plaintiffs may seek out or manufacture a dispute to trigger the return of jurisdiction to the original court. An example is the litigation in *West Caribbean Airways*, 2012 WL 1884684, where rather than asserting their claims on the merits in France, the plaintiffs' focus was urging the French courts to abdicate jurisdiction. Nonetheless, should Plaintiff assert her case against Defendant Air France (and/or the other potential parties identified above) on the merits in France and be denied jurisdiction, the Court would consider a motion to vacate this dismissal after Plaintiff exhausts her appellate remedies there.

---

[10] Only one hearing before Chief Judge Torres was held in this matter, and that 20-minute hearing was scheduled by the Court *sua sponte* to set the parameters of *forum non conveniens* discovery. (DE 27.)

### B. **Severance**

Having found that Defendant Air France's motion should be granted, the matter remains as to what is to become of Plaintiff's remaining negligence count against Defendant Miami-Dade County. Under these circumstances, numerous courts have found that severance is the proper procedure. *See, e.g.*, *Warter v. Boston Sec., S.A.,* 380 F. Supp. 2d 1299, 1307 (S.D. Fla. 2004) (recognizing that the court may sever claims on its own under Rule 21 where "dismissal on *forum non conveniens* grounds would further the administration of justice, but venue in the alternative forum is not appropriate for one or more of the defendants" (quotation omitted)); *Rudersdal v. Harris*, No. 18 Civ. 11072, 2021 WL 2209042, at *21–28 (S.D.N.Y. Feb. 27, 2021), *report and recommendation adopted as modified*, 2022 WL 263568 (S.D.N.Y. January 28, 2022) (listing cases and recommending severance of claims under Rule 21 to facilitate dismissal under *forum non conveniens*); *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 724 (W.D. Tex. 2008) (dismissing claims on *forum non conveniens* grounds and severing other claims under Rule 21). A district court may add or drop a party or sever a claim "on motion or on its own." Fed. R. Civ. P. 21. A district court enjoys "considerable discretion" in determining whether to sever under Rule 21. *Est. of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010).

In looking at a distinct but fairly analogous issue—severance and partial transfer—the Fifth Circuit observed:

> the court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places.

17

*Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by Trivelloni–Lorenzi v. Pan Am. World Airways, Inc.* (*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*), 821 F.2d 1147 (5th Cir. 1987), *vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). Generally, severance may be granted as long as the claims are discrete and separate. *Hofmann v. EMI Resorts, Inc.*, 09-20526-CIV, 2010 WL 9034908, at *1 (S.D. Fla. July 21, 2010). "Factors to be considered in determining whether to effectuate a severance include: (1) 'the interest of avoiding prejudice and delay;' (2) 'ensuring judicial economy;' (3) 'safeguarding principles of fundamental fairness;' and (4) 'whether different witnesses and documentary proof would be required for plaintiffs' claims.'" *Id.* (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010)). Courts have also considered "whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the claim is severed." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at * 4 (N.D. Fla. Feb. 12, 2010).

Here, given the overwhelming factors that weigh in favor of granting Defendant Air France's Motion for *forum non conveniens* dismissal—which "safeguard" the principle of fundamental fairness—and the fact that France would not be an appropriate or relevant forum for the claims against Defendant Miami-Dade County, severance is appropriate. As discussed above, Plaintiff asserts very limited allegations against the County regarding its decision to encourage Giambanco to check her walker at the check-in counter in Miami as opposed to at the gate. Plaintiff does not allege that Giambanco was denied a

wheelchair in Miami International Airport after she checked her walker, and Plaintiff's allegations support a reasonable inference that Giambanco arrived in France in the same health that she enjoyed when she left Miami. (*See* DE 55 ¶¶ 22–31.) Plaintiff does not allege that the County had any control over Defendant Air France's actions in Charles de Gaulle Airport such that Plaintiff's claims against the County are "so involved" with her claims against Defendant Air France and potential claims against ADP and its subcontractor. It is clear that Plaintiff's experiences with the County are separate transactions governed by separate regulatory requirements. Furthermore, the issues to be litigated are distinct, the defense witnesses are distinct, the defense documents and evidentiary proof are distinct, and the laws to be applied are distinct.

Finally, Plaintiff will not be prejudiced by severing these claims. Plaintiff filed this case on January 7, 2020, against Defendant Air France. More than a year later, Plaintiff filed an amended complaint (DE 37), adding a claim against the Miami-Dade Aviation Department.[11] On June 30, 2021, Plaintiff dismissed her claims against the Miami-Dade Aviation Department given that it was the wrong entity and then filed her Second Amended Complaint on July 22, 2021, naming the County as the correct entity. After six months passed, the Court reviewed the docket and noticed no pleading had been filed demonstrating that the County had been served. The Court then ordered Plaintiff to show cause why the County should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Two days later—and more than two years after Plaintiff filed the initial complaint—Plaintiff served Defendant Miami-Dade County on January 12, 2022.

---

[11] The Court struck the amended complaint given that Plaintiff did not seek leave of Court and amendment was not permitted as of right by the Federal Rules of Civil Procedure.

Consequently, inasmuch as Plaintiff's litigation against the County has just begun and her allegations against the County are limited, Plaintiff will not be prejudiced by severance of her claims.

### C. Supplemental Jurisdiction

Plaintiff alleges, "Jurisdiction is proper in the federal courts of the United States pursuant to 28 U.S.C. §1367(a), in that this is an action in which the federal courts have original jurisdiction under 28 U.S.C. §1331(a), and therefore the federal courts have supplemental jurisdiction over this claim against Defendant Miami-Dade County." (DE 55 ¶ 7.) When a federal court has dismissed all of the federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining state-law claims. 28 U.S.C. § 1367(c); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial).[12]

In light of the early stage of Plaintiff's litigation against the County, the local nature of Plaintiff's claims against the County, and the fact that the Court has dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law count.

---

[12] Furthermore, "some claims asserted under § 1367(a) will be dismissed because the district court declines to exercise jurisdiction over them and, if they are to be pursued, must be refiled in state court. To prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court, § 1367(d) provides a tolling rule that must be applied by state courts." *Jinks v. Richland Cty., S.C.*, 538 U.S. 456, 459 (2003). Here, Plaintiff first asserted a claim against Miami-Dade Aviation Department in May 2021 and filed her Second Amended Complaint substituting in Miami-Dade County in July 2021, which is within Florida's two-year statute of limitations for wrongful death suits and four-year statute of limitations for negligence suits.

IV.     **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss (DE 44) is **GRANTED IN PART** on *forum non conveniens* grounds and **DENIED AS MOOT** on all other grounds;

2. The Court declines to exercise supplemental jurisdiction over Plaintiff's claims against Miami-Dade County;

3. This case is **DISMISSED WITHOUT PREJUDICE**;

4. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>30th</u> day of March, 2022.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE